# Cases

# SECOND DEPARTMENT,

AT

# GENERAL TERM,

## December, 1885.

---

**FRANCES H. SIMONS, APPELLANT, v. THE NEW YORK LIFE INSURANCE COMPANY, RESPONDENT.**

*Policy of insurance — when the company is not bound by the oral representations of its agents — Tontine system of insurance — rights of a policyholder prior to the period fixed for distribution — such a policy is not void as a gaming contract — the company is not required to separate Tontine funds from general funds.*

This action was brought by the plaintiff to recover damages alleged to have been sustained by her by means of false representations made by the defendant, and for a breach of a contract made by it, whereby it insured the life of the plaintiff's husband for her benefit. The complaint alleged that the plaintiff had been induced to take out a policy of insurance on the life of her husband on the tontine plan, by means of the representations and statement made to her husband acting as her agent, by the defendant, which representations and statement were false and fraudulent. Upon the trial it appeared that the application was made to the husband of the plaintiff by an agent of the company, who produced a pamphlet issued by the company and read portions thereof to the husband, and also allowed the latter to read it himself.

The counsel for the plaintiff read from this pamphlet a description of the tontine plan, and an explanation of its peculiarities and advantages substantially as they were set out in the complaint. He then asked the husband, who was a witness, " what further representations did he (the agent) make to you at the time in regard to the advantages of this tontine investment plan as compared with other plans of insurance." Upon the defendant's objecting the witness was not allowed to answer this question. The court also refused to allow the witness to testify that he was induced to accept the policy by representations, other than those contained in the printed pamphlet, made to him as to the advantages of the tontine plan over the others.

*Held,* that the evidence was properly rejected for the reasons:

*First.* That the policy expressly provided that no representations made by the person procuring the application therefor should be binding on the company, unless the statement was reduced to writing and presented to the officers of the company at the home office.

*Second.* That as the pamphlet which contained a full and true description of the tontine plan of insurance was read by the agent of the plaintiff, and there was no concealment or misrepresentation on that subject, any statements made by the agent as to the advantages of that plan over others suggested, amounted simply to recommendations and expressions of his own opinion, and could not be deemed to have deceived or misled the plaintiff or her husband.

*Third.* That the representations related only to future and not to past acts.

By the terms of the policy the life of the husband was insured for $5,000, and provisions were made for the division of the tontine fund among the holders of policies in force at the period fixed for distribution.    The policy was issued on February 15, 1875, and the tontine dividend period was to be completed on February 11, 1885.    The premiums falling due on the policy were paid down to February 11, 1880, when the policy lapsed by reason of the non-payment of subsequently accruing premiums.    In this action, commenced in 1882, while the husband was yet alive, the complaint alleged that the defendant did not perform the obligations assumed by the policy, which were specified in the complaint, and that by reason of its failure so to do, the plaintiff had sustained damages.

*Held,* that the action was prematurely brought as the plaintiff had no interest in the fund until the tontine period had expired, as it could not before that time be ascertained whether or not her husband would then be alive or the policy be in force.

That the plaintiff had forfeited all her rights under the policy by a failure to pay the annual premiums.

That the defendant was not required to keep the funds arising from the policy, or the class of policies to which it belonged, separate and apart from the other funds of the company, or to separately invest them for the benefit of the persons who might eventually be entitled to receive them.

That the contract could not be held to be void as in effect a gambling contract.

That even if it were a gambling contract the plaintiff could derive no benefit from that fact, as her action was not based upon the law against gaming, and she was in *pari delicto* if the contract were immoral and void.

APPEAL from a judgment of the Circuit Court, in the county of Kings, dismissing the complaint herein, on a trial of the issues herein before a jury.

The action was brought by the plaintiff to recover of the defendant damages by reason of false representations and breach of contract on a policy of insurance issued by the defendant on the life of Augustus H. Simons, the husband of plaintiff.

The policy was issued upon what is known as the "Tontine Investment Policy Plan," February 15, 1875. The complaint alleged that prior to the issuance of said policy the defendant represented to the plaintiff, among other things, that said policy plan "had many and great advantages over the ordinary form of insurance; that the fund arising from the premiums paid upon policies belonging to said Tontine class were to be kept separate and distinct from premiums paid upon other classes and kinds of policies issued by said defendant, and would be separately kept, invested and accumulated in trust for the benefit of the surviving members of said Tontine class of policies.

The complaint further shows that all of said representations were false and untrue; that the defendant did not, from the inception of said policy, or of the class of policies to which it belonged, or at any time thereafter, keep the funds arising thereupon separate and apart from other funds of said company, and did not separately handle, invest and accumulate the same for the benefit of the plaintiff and other persons belonging to the same class, but mingled the said fund or funds with the general funds of said company, and subjected said fund to the hazard and expenses attaching to the general funds of said company, so that it became impossible to trace, separate or distinguish the same or to carry out the representations made to, and the contract made with the plaintiff. To this complaint the defendant demurred, and the same having been heard at Special Term, the demurrer was overruled. The defendant thereupon appealed to the General Term, and, after argument, the decision of the Special Term was sustained. The defendant then answered, and in substance denied the allegations of the complaint.

The cause having come on for trial before Mr. Justice Cullen and a jury, proofs were offered to sustain the allegations of the complaint. At the close of plaintiff's case the judge, after rejecting most of the evidence offered by the plaintiff in support of the complaint, dismissed the complaint, and from said judgment the plaintiff appealed to this court.

*B. F. Tracey*, *Wm. Wirt Hewett* and *Lucius McAdam*, for the appellant.

*W. B. Hornblower*, for the respondent.

DYKMAN, J.:

On the 15th day of February, 1875, the plaintiff procured from the defendant a policy of insurance on the life of her husband in the amount of $5,000, on what is called the tontine investment policy plan, which seems to be a plan with a double aspect. In the first place the person was insured in the amount of $5,000 for the term of his natural life with the condition and restrictions usual in an ordinary life policy. Then it was provided that the policy was issued and accepted on certain special agreements and conditions relative to policies on the tontine investment policy plan, and they were substantially as follows : The policy was issued on the tontine investment policy plan, and the tontine dividend period was to be completed on the 11th day of February, 1885. No dividend was to be allowed or paid upon the policy unless the person whose life was insured should survive until the completion of the tontine dividend period, and unless the policy should then be in force, all surplus or profits from such policies in the tontine investment policy plan, as should cease to be in force before the completion of their respective tontine dividend periods, were to be apportioned equitably among such policies of the same class as should complete their tontine dividend periods in the same year. After the completion of the tontine dividend period on the 11th day of February, 1885, if the policy had not been previously terminated by lapse or death, the accumulation apportioned to this policy secured to the assured, one of the following benefits :

*First.* To apply the accumulated dividend to the purchase of an annuity during the continuance of the life of the insured payable to the insured or assigns.

*Second.* To continue the assured for the original amount and withdraw the accumulated dividend upon this policy in cash payable to the insured or assigns.

*Third.* To withdraw the entire equity in the accumulations that belong to the policy in cash.

*Fourth.* To convert the entire equity into its equivalent in a paid up policy without participation in profits, on compliance with a proviso not material here.

*Fifth.* The conversion of the entire equity into an annuity to continue during the life of the insured.

All these benefits were at the option of the insured.

The premiums were paid down to the 11th day of February, 1880, and then the policy lapsed for non-payment of premiums, according to one of its conditions. There was a stipulation in the body of the policy that no representation made by the person procuring the application therefor should be binding on the company unless the statement was reduced to writing and presented to the officers of the company at the home office in the application. There was no such statement in the application for this policy.

The plaintiff commenced this action in the year 1882, while her husband was yet alive, setting out in her complaint the substance of the policy, and a description of the tontine principle, and alleging that at the time of the issuance of the policy the defendant represented to the husband of the plaintiff, who was her agent in that behalf, that the policy about to be issued had many and great advantages over the ordinary form of insurance, and among other things, stated the principle of the tontine plan substantially as it was; that the plaintiff relied solely and entirely on the representation so made and accepted the policy on such reliance; that such representations were false and fraudulent, and that the defendant did not perform the obligation assumed by the policy in many respects, which are specified, and that by reason of the violation of the contract by the defendant, the benefits of the same have been lost to the plaintiff to her damage of $2,500 which she seeks to recover in this action. The complaint was dismissed on the trial and the cause comes here on appeal from that judgment.

On the trial it appeared that the application was made to the husband of the plaintiff by an agent of the company who produced a pamphlet issued by the company from which he read portions himself and allowed the husband to read it also. The counsel for the plaintiff read from this pamphlet a description of the tontine principle, and an explanation of its peculiarities and advantages substantially as they were set out in the complaint. The counsel for the plaintiff then asked her husband, who was a witness for her, this question: What further representations did he (the agent) make to you at the time in regard to the advantages of this tontine investment plan as compared with other plans of insurance?

This was objected to and excluded and then various other ques-

tions were propounded to the witness with a view of presenting the same question in various aspects, and all the testimony was excluded. The witness then testified that the agent made statement and explanations of the tontine plan in addition to those contained in the pamphlet, and was asked what those statements were. That testimony was also excluded. This question was also asked and rejected: Q. In accepting this policy did you rely upon the representations made to you touching the advantages of this plan over other plans and touching the manner in which the funds or profits accruing to the assured was to be kept and preserved? The court decided that the counsel inquire as far as the pamphlet was concerned, and that the inquiry must be so limited. In the application one of the questions asked of the plaintiff was whether the tontine plan had been fully explained to her, and whether she authorized the company to retain the dividends on the policy thereby applied for and to place the same in a reserve fund, in which she was to participate in accordance with the provisions made by the company regarding policies in the class she had selected, and not otherwise, and her answer was in the affirmative. It was the claim of the plaintiff's counsel on the argument of this appeal that this action was for fraud, and that the exclusion of the representations made by the agent of the defendant when he solicited the application was erroneous, because the fraud was then and there perpetrated by him in that way. The answer to this seems to be that the power and authority of the agent to make representations was limited to statements made in writing and presented to the officers of the company in the application. And the plaintiff was made aware of this restriction because it is contained in the policy itself; more than that, the pamphlet containing a full and true description and representation of the tontine plan of insurance was read by the agent to the plaintiff, and there was no concealment or misrepresentation on that subject. If after that the agent made representations respecting the advantages of the plan over other systems and forms, they were quite immaterial and amounted simply to recommendation and opinion. They had no tendency to deceive or mislead the plaintiff or her husband so long as the plan itself was explained to, and understood by them.

Commendation is not misrepresentation; even exaggeration

differs widely from intentional falsehood; general assertions as to value or advantage cannot be made the basis of an action for deceit; an expression of opinion is not a representation of fact upon which a charge of fraud can be predicated. Even assuming that there was misrepresentation by the agent, the plaintiff was not misled, for the whole of the system was laid before her truly by the reading of the pamphlet. These reasons seem to be a sufficient justification of the ruling which rejected the representations of the defendant's agent beyond the facts embodied in the pamphlet. If there be no proof of the perpetration of a fraud aside from the declaration of the defendant's agent, not reduced to writing as contemplated by the policy of insurance, then there should be no recovery on that ground. All the representations made by the company were contained in the pamphlet, and that stated the plan of tontine insurance as carried into practice by the defendant with accuracy; and the plaintiff was notified that the agent was not authorized to make any further or other statements except in a particular manner, which was not pursued.

The complaint in the action wears two aspects not entirely consistent with each other. It alleges that at the time of the issuance of the policy certain false and fraudulent representations were made; that the plaintiff relied on them and believed them and accepted the policy. Then it is alleged that such representations were false and fraudulent, and that the defendant violated them in several particulars which are specified. Then it is charged as a result of the facts stated, "that by reason of the violations and breach of contract as aforesaid on the part of the said defendant the benefits of said contract have been lost to the said plaintiff to her damage in the sum of twenty-five hundred dollars," and judgment is demanded for that sum. Evidence of the failure of this company after this contract was made to execute and carry it out was inadmissible under the charge of fraud perpetrated as an inducement to its formation before it had its inception, and so conversely testimony to establish fraud perpetrated before the contract was consummated as inducement to make it was not proper or material under the charge of a breach or failure to perform the contract after its execution.

Then in the points submitted by the appellant on this appeal it

is stated that the action is brought to recover damages by reason of false representations and breach of contract. It was also claimed by the appellant that the action was for fraud, and therefore she had the right to prove all the representations made by the agent of the defendant when the contract was made. Our examination of the case has thus far proceeded on that theory, and we have so far found nothing for its support.

In the examination of the case on the other theory it is to be remarked at the time of the commencement of this action the tontine period of ten years had not expired. So that she had no interest in the tontine fund and it could not appear that she ever would have, for her husband might not survive this tontine period, until the expiration of that period in the lifetime of her husband she had no rights in the funds. Both the expiration of the period and the survival of her husband were conditions precedent to the accruing of any rights to the plaintiff in such fund.

Neither do we find evidence of any breach of the contract by the defendant. The breach alleged is that the defendant did not from the inception of the policy or of the class of policies to which it belonged, or at any time, keep the funds arising therefrom separate and apart from other funds of the company, and did not invest the same separately for the benefit of the plaintiff and other persons of the same class but, on the contrary, mingled the same with the general funds of the company. In answer to this it is to be said that there is no proof of any undertaking or agreement on the part of the company to keep such fund separate from the other funds of the company and no reason is disclosed for so doing.

Further it is to be said that the plaintiff has forfeited all her rights under the policy viewed as a contract of insurance by the failure to pay the annual premiums, and so her rights are foreclosed for that reason on this branch of the case. The contract was not rescinded by the plaintiff and she did not refuse to pay the premiums on that ground; neither is the complaint framed on the theory of a rescision. The action is not for money had and received or improperly obtained, but for the recovery of damages.

It was claimed by the counsel for the appellant on the argument that this insurance contract was a gambling contract, and that the plaintiff was in effect betting on the chances of the continuance of her hus-

band's life beyond the tontine period of ten years, and that the company had bet against her. We cannot assent to this view. All insurances are based more or less on the doctrine of chances, but they are by no means gambling contracts, unless they are wager policies, and then they are void in law. But this consideration need not be further pursued, for the plaintiff can obtain no advantage from the position even if it be tenable. Her action is not based on the law against gaming, and she is in *pari delicto* even if the contract was immoral and void.

This policy is a policy of insurance on the life of the plaintiff's husband, payable at his death if the annual premiums have been paid and the policy is in force at that time. So far as that contract of insurance is concerned there is no claim that the defendant has not fully complied with its undertaking. One part of every premium is set aside to accumulate as a fund toward the payment of the policy when it becomes a claim against the company. That fund is called the reserve fund. Another part of the premium is consumed in paying the costs of insurance and expenses. The remaining third part, augmented by the excess of interest earned upon the reserve of the policy, is surplus. Under an ordinary policy this surplus is annually returned to a policyholder in some way agreed on and is commonly called dividend.

On this policy has been engrafted the system called tontine, under which that surplus, instead of being divided and paid to the policyholder, goes to a fund called the tontine fund, the amount being credited to the particular class to which the policy belongs. When a policy lapses the reserve value becomes profits, and under the scheme such profits are divided among the surviving holders of the various classes. Such in substance is the tontine scheme, and such it was represented to be by the pamphlet issued by the company and read in evidence on the trial of this action. The annexation of the plan to the policy did not invade nor vary the legal effect of that instrument as a policy of insurance for life. It merely constituted a consent for the retention of the surplus dividend by the company during the tontine period, at the termination of which the accumulations from all sources are to be divided among the surviving holders of policies of that class in existence. The representations complained of had reference only to the surplus dividends, left

with the company by consent of the insured for accumulation during the tontine period. The allegation of the complaint, however, is that the fund arising from premiums paid upon policies belonging to the tontine class were to be kept separate and distinct from premiums paid upon other classes and kinds of policies issued by the defendant, and would be separately kept invested and accumulated in trust for the benefit of the surviving members of the tontine class. If such representations were made by the agent to the plaintiff and her husband, they had full information that the tontine scheme contemplated nothing of that kind.

In the portion of the pamphlet read in evidence on the trial by the counsel for the plaintiff, it was stated distinctly that the annual surplus arising from the policies in each class would be set aside to accumulate for the stipulated number of years; not that the fund arising from the premiums were to be set aside, nor that any separate investment was to be made. The representation therefore had reference to a subject which had been fully explained to the husband of the plaintiff from the same pamphlet, and a false guaranty or representation can be founded on nothing that is open and visible and well understood. They only apply to secret defects and unexplained faults.

Again, these representations taken at their worst, related only to the future. No fact was misrepresented, and the sole claim is that in the future the tontine fund was to be invested and handled separately. That at most would constitute a condition subsequent in the contract for the violation of which the plaintiff might obtain appropriate redress. The plaintiff has no interest in the mode of investing and handling these funds. Her interest is subserved if the persons insured on this plan are divided into classes and separate and accurate accounts are kept with each class on the books of the company. It appeared in evidence that this had been done, and that each policy was credited annually with the surplus dividend it would have received each year if had not been a tontine policy. Also that when any policy in the class lapsed for non-payment of premiums or any other cause, or matured by death, the amount of its accrued dividends so credited, augmented by compound interest, was credited to the class. This is in full compliance with the declaration in the pamphlet that the annual surplus arising

SECOND DEPARTMENT, DECEMBER TERM, 1885.

from the policies in each class will be set aside for accumulation. So it appeared that all the legal rights of the plaintiff were properly guarded and secured.

We cannot discover, what the counsel for the appellant claimed on the argument of this appeal, that the statements of the tontine plan in the policy and in the pamphlet were indefinite or uncertain, for the statement is very plain and very easily understood, and no testimony of experts or witnesses of any kind is required for its elucidation or comprehension.

It must be borne in mind after all, that the plaintiff never acquired any vested rights in the tontine fund because she voluntarily ceased the payment of premiums and her policy lapsed for that reason before the expiration of her tontine period.

We can discover no ground upon which a recovery for the plaintiff can be founded. We have examined carefully all the exceptions taken on the trial and find no error, and our conclusion is that the complaint was properly dismissed.

The judgment should be affirmed, with costs.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Judgment affirmed, with costs.